[Crim. No. 5648. In Bank. Mar. 15, 1955.]

THE PEOPLE, Respondent, v. JACK SYKES, Appellant.

Sol A. Abrams and George E. Hammer for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

EDMONDS, J.—The appeal of Jack Sykes, who with Rudy Mercado, was indicted for furnishing marijuana to Beverly Detrick, a minor, is from the judgment of conviction of the crime of violating section 11714 of the Health and Safety Code.

Beverly Detrick, 17 years of age, testified that while she was sitting in a café, Sykes entered, took a marijuana cigarette from his pocket, and handed it to Mercado. After Mercado lighted the cigarette, he handed it to Beverly. She smoked it and gave it back to Mercado who returned it to Sykes. Sykes smoked it and then passed it back to Mercado, who again smoked it before passing it on to the others seated around the booth. It was then returned to Sykes. Beverly testified that while the cigarette was being passed around, Mercado and Sykes were saying, "Keep it down so no one can see it."

Beverly further testified that on the following evening, while riding in a taxicab driven by Sykes, he handed her another marijuana cigarette. This, she said, was in the presence of a person named Frank or Eddie. When cross-examined she testified that Jesus Gonzales, whom she knew as Frank Cruz, was not present on either occasion. Upon redirect examination she declared that Jesus Gonzales was the man in the taxicab who gave her the cigarette. Gonzales denied knowing Beverly at the time she said he was with her.

Beverly testified that she was introduced to Sykes sometime in the third week in March by Mercado, with whom she

was living at the time. Over objection, Beverly testified at great length that she had been recruited as a prostitute by Sykes, to whom she paid one-half of her income. She further testified that they had discussed the rates she should charge and how to detect venereal disease. He took her to hotels and suggested false names for her to use in registering.

Other testimony by Beverly was that she had smoked marijuana cigarettes 28 or 29 times previous to the evening Sykes offered one to her. She described the cigarette offered to her. She was familiar with the odor of marijuana, she said, and smoking the cigarette that night made her feel "a little high." Beverly said that she had never paid any money to Sykes for marijuana.

Inspector Maloney, a qualified expert on narcotics, testified that her actions and terminology were typical of one who had smoked a marijuana cigarette and her description of marijuana was correct. The method of smoking described by Beverly, the inspector said, was typical as well as the practice of passing of the cigarette from one person to another.

Mercado's testimony was that Sykes did not give him a marijuana cigarette at the café. The prosecution claimed surprise and asked to impeach the witness. Over objection, Mercado was asked if he had not pleaded guilty to the crime charged in the indictment. The district attorney also questioned him about the circumstances surrounding the plea and prior inconsistent statements made at that time. In answer to other questions over objection, Mercado admitted the theft of some heroin from Sykes and the previous possession of narcotics.

Sykes contends that the court erred in admitting Beverly's testimony about her conduct as a prostitute under the direction of Sykes and also her charge that he gave her a cigarette on the night after they were in the café. The testimony of Sykes on cross-examination as to his previous possession of narcotics and the admission of Mercado that he had stolen narcotics from Sykes is also said to justify reversal of the judgment of conviction. Another contention is that the district attorney made prejudicial remarks to the jury during his opening and closing arguments by repeated reference to the alleged pimping and narcotic activities of Sykes. The prosecution failed to prove all of the elements of the crime charged, he says, and the evidence is not sufficient to support the conviction.

The attorney-general argues that the testimony by Beverly and the cross-examination of Sykes insofar as they touched on prostitution was admissible to show the plan, scheme or motive of Sykes. As such it is, the state asserts, an exception to the general rule that evidence of other crimes or immoral conduct is not admissible.

The theory of the prosecution is that Sykes carried on a complete plan to subjugate the mind and body of Beverly to his vile ends. ■ Generally, evidence to show a plan or scheme concerns the means used to gain an end, such as the theft of a pistol before an attack upon a person. ■ Here, the district attorney used the ends to prove the means. It is not necessary to decide whether such evidence shows plan or scheme, because it was relevant to prove motive. ■ The test for admissibility is: "does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not." (*People* v. *Peete*, 28 Cal.2d 306, 315 [169 P.2d 924]; also see: *People* v. *Dabb*, 32 Cal.2d 491 [197 P.2d 1]; *People* v. *James*, 65 Cal.App.2d 709, 710 [151 P.2d 572].)

■ Motive is a material fact. Evidence was offered that Beverly at no time paid Sykes for any narcotic. There is reason to believe that he was motivated in giving it to her because of their relationship in connection with prostitution and the sharing of its proceeds with him. Evidence of this relationship with her was, therefore, admissible.

■ No objection was made to the testimony of Beverly that Sykes gave her a second opportunity to smoke a marijuana cigarette on the night following the one on which the crime charged was alleged to have been committed. On cross-examination, a vigorous attack was made on this testimony. Having failed to object, Sykes cannot now complain that he was prejudiced. ■ Moreover, in cases based upon the commission of certain types of crimes, evidence of similar conduct of the defendant with the same person who is named in the information or indictment "is admissible to show the disposition of the defendant to commit the act charged and the probability of his having committed it." (*People* v. *Jewett*, 84 Cal.App.2d 276, 279 [190 P.2d 330] and cases there collected.) This rule has been applied in prosecutions

for sex crimes, and upon a charge of pimping. (*People* v. *Bellamy*, 79 Cal.App. 160 [248 P. 1042].) The reasons for applying that rule where the charge is furnishing narcotics to a minor are just as compelling as in sex cases.

■ Upon cross-examination of Sykes it was proper to ask if he had ever ·had narcotics in his possession. Sykes was charged with giving narcotics to Beverly. Previously Sykes had repeatedly denied in broad terms the commission of the crime. In such circumstances, the permissible scope of cross-examination is very wide. (*People* v. *Zerillo*, 36 Cal.2d 222, 229 [223 P.2d 223].) The evidence that at prior times he had narcotics in his possession was admissible to show familiarity with them.

■ It is contended that the testimony which brought out the admission by Mercado of the theft of heroin from Sykes was highly prejudicial. But, the only effect such evidence could have had on the case against Sykes was to show the previous possession of narcotics by him. As such possession had already been admitted by Sykes in previous testimony, the admission of Mercado's statement on this point was harmless. (*People* v. *Cohen*, 94 Cal.App.2d 451, 456 [210 P.2d 911]; *People* v. *Booth*, 72 Cal.App. 160, 166 [236 P. 987].)

Upon direct examination Mercado was asked, "Did Jack Sykes ever furnish you with marijuana?" Mercado replied, "No, sir." Claiming that he was surprised by this reply the district attorney asked leave to impeach the witness. An objection upon the grounds that Mercado was the prosecution's own witness was overruled, the trial judge stating that he might be impeached if surprise were shown and a foundation laid for that purpose. Mercado then was asked if he had pleaded guilty, in a joint indictment with Sykes, to a charge of giving narcotics to Beverly. He replied that he had. He further explained that he had been arrested in another state, brought to California by a police officer, and interrogated by the prosecuting attorney before entering the plea of guilty. Mercado testified that he told both of these men that Sykes had given him a marijuana cigarette which he had passed on to Beverly. But he told the police officer this, he said, because he had a grievance against Sykes and was lying when he made the same statement to the prosecuting attorney. The only objection to any of these questions was that one of them had already been asked and answered. This objection was overruled.

Sykes admits that the prosecution was entitled to impeach

Mercado but argues that the method of doing so was improper. He contends that by these questions the prosecution was permitted to draw the admission from Mercado that he had pleaded guilty and thus impeached his credibility by showing bad character. He asserts that the police officer and the prosecuting attorney were both available to give testimony as to the prior inconsistent statements.

The party producing a witness is not allowed to impeach his credibility by evidence of bad character, but it may be shown that he has made prior statements inconsistent with his present testimony. (Code Civ. Proc., § 2049.) ''[B]ut before this can be done the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. . . .'' (Code Civ. Proc., § 2052.) ■ The officer and the prosecuting attorney could not be asked about the prior statements until the foundation questions had been asked of Mercado. Once he admitted the inconsistent statements, it would have been error to introduce other evidence of them (See: *People* v. *Pianezzi*, 42 Cal.App.2d 265, 272 [108 P.2d 732].)

It is unnecessary to decide whether the question regarding the guilty plea was properly a part of the foundation for impeaching Mercado. If it were error, it could have been remedied by an admonition to the jury to disregard it. However, no objection to the question was made. ■ On the contrary, on cross-examination by counsel for Sykes, Mercado was asked if he wished to explain why he had stated to the prosecuting attorney that he had given a marijuana cigarette to Sykes or Beverly. Mercado then related at length the events leading to the entry of his plea of guilty, attempting to show that this statement was part of the transaction in which he was induced to plead guilty to the charge of furnishing marijuana to Beverly in order to escape prosecution upon two other charges. In these circumstances, Sykes cannot now complain that he was prejudiced.

■ Sykes complains of assertedly prejudicial remarks of the district attorney in his opening and closing arguments. Without determining whether the references to pimping and narcotics were improper, they do not constitute grounds for reversal. ''No objection was made to the argument. It was not assigned as misconduct. The court was not requested to instruct the jury to disregard it. Under these circumstances appellant waived his objection to the challenged statements

(case cited) and the misconduct if any will not warrant reversal.'' (*People* v. *Jones,* 91 Cal.App.2d 501 [205 P.2d 437]; also see *People* v. *Hunter,* 49 Cal.App.2d 243 [121 P.2d 529]; *People* v. *Lew,* 78 Cal.App.2d 175 [177 P.2d 60].)

Other points made by Sykes concern the asserted lack of proof of the corpus delicti, and the insufficiency of the evidence to support the conviction. The testimony of Beverly, if believed, is ample to prove the elements of the crime charged and fully supports the judgment of conviction.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—In my view the opinion prepared for the District Court of Appeal by Presiding Justice Peters and concurred in by Justices Bray and Wood (Fred B.) (reported in (Cal.App.) 273 P.2d 588) adequately discusses and correctly resolves all issues of law presented on this appeal. For the reasons therein stated it is my conclusion that the defendant was deprived of a fair trial and that the judgment of conviction should be reversed.

TRAYNOR, J.—I dissent. Defendant was jointly indicted with Rudy Mercado on one count of furnishing marijuana to Beverly Detrick, a minor. (Health & Saf. Code, § 11714.) Mercado pleaded guilty, and defendant was convicted after a trial before a jury. Beverly testified that defendant shared one marijuana cigarette with her and others present on the occasion on which the indictment was based and that he shared another cigarette with her and another person a night or two later. She did not pay defendant for the puffs she took from his cigarettes. Defendant admitted that he knew Beverly but denied that he had ever given her any marijuana or shared any marijuana cigarettes with her. Thus the only issue in the case was whether or not defendant shared his cigarette with Beverly on the first occasion mentioned above. To prove its case, the prosecution was permitted to introduce evidence over defendant's objection that a few days before the date of the alleged crime, defendant had discussed prostitution with Beverly and other girls and that during the next two weeks she had engaged in prostitution for defendant on 12 occasions. Defendant secured the customers for her and shared the proceeds with her. He did not supply her with marijuana or discuss marijuana on any of the occasions when he took her to hotels for purposes of prostitution.

It is my opinion that this evidence that defendant was pimping for Beverly was not admissible to prove that he shared his cigarette with her and could serve only to prejudice the jury against him and induce them to convict him, not because he was guilty of the crime for which he was on trial, but because he was a pimp.*

Although the rule with respect to the admission of evidence of crimes other than the one charged in a criminal prosecution has frequently been stated as one generally excluding evidence of other crimes subject to certain recognized exceptions (see *People* v. *Albertson*, 23 Cal.2d 550, 576 [145 P.2d 7]), it is now "settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge." (*People* v. *Woods*, 35 Cal.2d 504, 509 [218 P.2d 981]; see also American Law Institute, Model Code of Evidence § 311; National Conference of Commissioners of Uniform State Laws, Uniform Rules of Evidence, rule 55; Stone, *Exclusion of Similar Fact Evidence*, 46 Harv.L.Rev. 954 and 51 Harv.L.Rev. 988.) In the application of this test, however, the reasons for the exclusionary rule must not be forgotten; there must be care to avoid unnecessary prejudice to the defendant. Evidence that defendant has committed other crimes is excluded as proof of his criminal disposition for the same reasons that other evidence of his criminal character is excluded. "The inquiry is not rejected because character is irrelevant; on the contrary it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of the issues, unfair surprise and undue prejudice." (Jackson, J., in *Michelson* v. *United States*, 335 U.S. 469, 475-476 [69 S.Ct. 213, 93 L.Ed. 168].) "The common law has not grown in the tradition of convicting a man and sending him to prison because he is generally a bad man or generally regarded as one. General bad character, much less general bad reputa-

---

*Since no objection was made to the evidence that defendant shared a marijuana cigarette with Beverly on another occasion, it is unnecessary to consider whether that evidence would otherwise have been inadmissible.

tion, has not yet become a criminal offense in our scheme. Our whole tradition is that a man can be punished by criminal sanctions only for specific acts defined beforehand to be criminal, not for general misconduct or bearing a reputation for such misconduct.'' (Rutledge, J., dissenting in *Michelson* v. *United States, supra,* 335 U.S. at p. 489.) The prejudicial effect of evidence of other crimes lends support to the view that even when such evidence is directly relevant to the proof of a material fact, the trial court should have discretion to exclude it when its relevance is negligible as compared with its prejudicial effect and other proof of the issue is at hand. ''This is a situation where the policy of protecting a defendant from undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion.'' (*State* v. *Goebel,* 36 Wn.2d 367 [218 P.2d 300. 306]; see also *Adkins* v. *Brett,* 184 Cal. 252, 258-259 [193 P. 251]; Stone, *Exclusion of Similar Fact Evidence,* 46 Harv.L.Rev. 954, 984-985; McCormick on Evidence, § 157, pp. 332-333.) In any event the court ''should be guided by the rule that such proof is to be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt.'' (*People* v. *Albertson,* 23 Cal.2d 550, 577 [145 P.2d 7]; see also *People* v. *Peete,* 28 Cal.2d 306, 316 [169 P.2d 924]; *People* v. *Lane,* 100 Cal. 379, 387-390 [34 P. 856]; *People* v. *Carvalho,* 112 Cal.App.2d 482, 492 [246 P.2d 950].)

The basic question is whether defendant's pimping is relevant to prove only his criminal disposition or also relevant to prove facts material to the prosecution's case. For the reasons stated above, failure of the challenged evidence to emerge as clearly relevant compels resolution of the question in defendant's favor.

The attorney general contends that the evidence was relevant on the ground that it was defendant's scheme to reduce Beverly to drug addiction so that he might dominate her completely as a prostitute. The majority opinion does not pass on the validity of this contention. Instead, it moves on to the conclusion that the evidence of pimping was relevant to show defendant's motive for sharing his cigarette with

Beverly. The issue of defendant's motive, however, cannot be so divorced from the contention that both crimes were part of a common plan or scheme since, in the absence of proof of such a plan or scheme, there is no logical basis in the evidence for inferring that defendant's motive in sharing his cigarette with Beverly was explained by the fact that he was pimping for her.

It is always possible that two distinct crimes committed by a defendant are part of a common scheme or that one provides or illuminates the motive for the other. Were there evidence in this case that defendant had carried out a plan to subjugate Beverly to his will as a prostitute by reducing her to dope addiction, it could reasonably be inferred that his initial acts of pimping and providing marijuana were part of that plan and that the desire to carry it through was the motive for each of the crimes that it involved. The record is barren of such evidence; it presents two apparently unrelated courses of criminal conduct. It is for the prosecution to supply the missing links; if it fails to do so, evidence conditionally admitted should be struck from the record. (*People v. Frank*, 28 Cal. 507, 518-519; *People v. Whiteman*, 114 Cal. 338, 343 [46 P. 99]; *People v. Wright*, 144 Cal. 161, 165-166 [77 P. 877]; *People v. Darby*, 64 Cal.App.2d 25, 31 [148 P.2d 28]; *State v. Goebel*, 36 Wn.2d 367 [218 P.2d 300, 306]; see also *Boyer v. United States*, 132 F.2d 12, 13 [76 App.D.C. 397]; 2 Wigmore on Evidence [3d ed.] § 304, p. 205; 6 *Ibid.* § 1871, p. 505; Trautman, *Logical or Legal Relevancy*, 5 Vand.L.Rev. 385, 409.) Else prejudicial evidence would be freely admitted, not for its relevance apart from defendant's criminal disposition, but for the possibility of its relevance to show more than the defendant's criminal disposition. What then becomes of the rule excluding evidence that bears only on criminal disposition?

If the facts of the case in the light of human experience do not make it reasonable to infer that one crime is evidence of the motive for another, evidence of the one is not admissible to prove the other. Thus, if a defendant were charged with the murder of a woman's husband, proof of his adulterous relation with the woman would be relevant to show the defendant's motive for killing the husband. But if the evidence showed only that he was committing adultery with a woman who was not his victim's wife, it would not be reasonable to infer that it was relevant evidence of the motive for the murder. It would become relevant, however, if it were

shown that the woman's husband had deserted her and that she had become the mistress of the defendant's victim. In such connecting evidence is relevance rooted, not in the drifting sands of speculative possibilities.

Had the prosecution established the elements of the scheme it contends existed, it would have established the relevance of the pimping as part of that scheme and defendant's motive for giving Beverly marijuana. In the absence of such connecting evidence, however, there is no reasonable basis for inferring that defendant's motive in sharing his cigarette with Beverly was the fact that he was pimping for her. Defendant's motive might have been to carry out the scheme the prosecution did not prove existed; it might have been no more than to share the enjoyment of the cigarette with others present as the prosecution expert testified marijuana smokers are wont to do; it might have been not to waste the cigarette, for many users apparently do not like to smoke a whole cigarette at once; conceivably it might have been to reward Beverly for acting as a lookout at a bank robbery or assisting him in the commission of some other crime; conceivably also it might have been to secure Beverly as a customer who would purchase narcotics from him in the future. There is a host of possibilities.

Except for its relevance in proving defendant's criminal disposition, the evidence of defendant's pimping is a neutral quantity neither adding to nor subtracting from the prosecution's case, and since it was clearly prejudicial, its admission should compel reversal of the judgment.

Carter, J., concurred.